# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re:** BRENT W. ARAVE, **Debtor.** | **Bankruptcy Case No. 06-40524-JDP** |

_____

| | |
|---|---|
| R. SAM HOPKINS, Trustee, **Plaintiff,** vs. DALE L. ARAVE and CAROL COLLEEN ARAVE, **Defendants.** | Adv. Proceeding No. 07-8072 |

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

Monte Gray, SERVICE, SPINNER & GRAY, Pocatello, Idaho, Attorney for Plaintiff.

David N. Parmenter, Blackfoot, Attorney for Defendants.

MEMORANDUM OF DECISION - 1

## Introduction

In this adversary proceeding, Plaintiff R. Sam Hopkins, chapter 7[1] trustee, seeks to avoid the transfer of Debtor Brent W. Arave's interest in a cabin to his parents, Defendants Dale and Carol Arave, under §§ 547 or 548 of the Bankruptcy Code. Defendants argue that Plaintiff failed to prove the elements of a either a preference or a fraudulent transfer and request that the action be dismissed.

On February 14, 2008, the Court conducted a trial. Documentary exhibits were admitted into evidence by stipulation, and the parties' stipulation as to undisputed facts was filed with the Court and read into the record. Docket No. 25. Brent[2] and both Defendants also testified. Upon close of the evidence, the parties elected to submit briefs in lieu of oral closing arguments. The parties filed their briefs. Docket Nos. 27, 28.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] Because they share a common last name, the Court refers to some of the parties by their first names. This is for clarity only, and no disrespect is intended.

MEMORANDUM OF DECISION - 2

Having now carefully considered the evidence and record, the parties' submissions and arguments, and the applicable law, this Memorandum disposes of the issues.[3]

## Facts

During their marriage, Brent and Connie Arave acquired various assets and assumed a significant amount of debt. Much of the community debt consisted of personal loans made to them by Defendants. Beginning in February 2001, and continuing through April 2004, Defendants extended loans to Brent, totaling $127,231.80. Ex. 202. One of the assets Brent and Connie acquired during their marriage as community property was the cabin that is the subject of this adversary proceeding located in Island Park.[4]

In late 2003 and early 2004, the couple experienced marital discord.

---

[3] This Memorandum constitutes the Court's findings of fact and conclusions of law. Rule 7052.

[4] The cabin is more specifically described as: "Lot 1, Block 1, Elk Creek Estates Subdivision No. 1, Fremont County, Idaho, As per the Recorded Plat thereof." Ex. 101.

MEMORANDUM OF DECISION - 3

Unable to reconcile their differences, Brent and Connie agreed to divorce, and on June 24, 2004, an order approving their stipulation and a divorce decree was entered by the state district court. Ex. 102. The provisions of the stipulation and its accompanying transcript and exhibits were merged and incorporated into the order, and Brent and Connie Arave were directed to strictly comply with that order. *Id*.

The divorce decree acknowledges that both Brent and Connie had, under oath, assented to the terms of the stipulation as read into the record, and that they agreed that the transcript attached to the stipulation was binding upon them. In addition to providing the details concerning child custody, visitation rights, and support, the stipulation apportioned the couples' community property and debt.[5] With respect to the division of the community real property, the stipulation provides:

---

[5] The exhibits attached to the stipulation identified the couples' community property and debt. Exhibit A listed the real property acquired by the couple during the marriage. Exhibits B and C listed the real and personal property which would be awarded to Brent Arave and Connie Arave, respectively. Exhibit D identified and allocated the community debt among the couple.

MEMORANDUM OF DECISION - 4

> The above described parcels of real property [referring to the residence and cabin described in Exhibit A] is [sic] hereby apportioned and transferred to [Brent], free of all claim and demands of [Connie]. The above-described property is transferred to and taken by [Brent] with all encumbrances and other obligations to which such property may be subject, except as otherwise provided herein.
>
> [Brent] shall pay and discharge all encumbrances and obligations and shall indemnify and hold [Connie] harmless from any liability and/or expense therefor. [Brent] shall be responsible for and pay any taxes which may be incurred or which may accrue to said property.
>
> [Connie] shall execute a Quit Claim Deed assigning her interest in the above-described real property to [Brent] in consideration for the terms of the property division provisions of this Stipulation.
>
> . . . .
>
> Each party releases, quitclaims, and assigns to the other party all his or her right, title, and interest, present and prospective, in each item of property herein apportioned, set aside, transferred, and confirmed to the other party, except as is specifically provided in this Agreement.

Ex. 102, Transcript of Stipulation, 17:1-19 and 20:13-18.

Neither the Order Entering Stipulated Decree of Divorce or a

MEMORANDUM OF DECISION - 5

summary thereof was recorded in the real property records of Fremont County.

After the divorce decree was entered, Brent executed a warranty deed purporting to convey the cabin to Defendants, which they recorded on August 27, 2004. Prior to this transaction, Brent, Defendants, and other members of Defendants' family all used the cabin for recreational purposes. After the deed was recorded, Defendants and most of their children continued their use of the cabin, but Brent never returned to the cabin. Over the years, Defendants have purchased various pieces of furniture for, and made several repairs to, the cabin.

In January of 2006, Julianne Eggold offered to purchase the cabin from Defendants. In response to that offer, Defendant Dale Arave requested that Connie, Brent's former spouse, execute a quitclaim deed to the cabin. He testified that he wanted the quitclaim deed from her because the divorce decree specifically mentioned that she would execute such a

MEMORANDUM OF DECISION - 6

deed, but that it was "common knowledge" that she had not done so yet.[6]

On February 23, 2006, in response to Defendant's request, Connie executed a quitclaim deed to the cabin, conveying her interest to Brent. Ex. 105. Then, on February 25, 2006, Brent executed a quitclaim deed to the cabin in favor of Defendants. Ex. 106. These deeds were recorded in succession on February 28, 2006. Exs. 105, 106. Three months later, on May 23, 2006, Defendants executed a warranty deed transferring the cabin to Julianne Eggold, which deed was recorded on June 21, 2007.[7]

On October 5, 2006, Brent Arave filed a petition for relief under

---

[6] Dale Arave testified that he requested the quitclaim deed from Connie, not because the title company required it of him, but rather because he thought it would ask him for it and he might as well have it ready. He also testified that he later learned from a title company representative that the divorce decree actually constituted a transfer of the property under Idaho law.

[7] When asked by Plaintiff's counsel why the dates of execution and recording of this deed differed by more than one year Defendant Dale Arave explained that Julianne Eggold had lost the original deed, and requested that he complete a new deed for her. Dale Arave testified that he signed a new deed, back-dating it to the date of the original transaction, and had it acknowledged by an employee in his office who was a notary public. The Court expressed doubts about the propriety of back-dating an acknowledged instrument during the trial, but as this transfer is not the focus of Plaintiff's avoidance action, the Court will comment no further on this questionable procedure.

MEMORANDUM OF DECISION - 7

chapter 7 of the Bankruptcy Code.  Plaintiff was appointed trustee, and initiated this adversary proceeding on July 12, 2007.

## Discussion

### I.

The Bankruptcy Code empowers a trustee to avoid a transfer of a debtor's interest in property to an insider made within one year of the debtor's bankruptcy filing.  In order to avoid a transfer to an insider as a preference, the trustee must prove that the transfer was (1) a transfer of an interest of the debtor in property; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt owed by the debtor; (4) made while the debtor was insolvent; (5) made within one year of the filing of the petition; and (6) enabled the creditor to receive more than they would have received in a chapter 7 liquidation had the transfer not been made. *Hansen v. MacDonald Meat Co. (In re Kemp Pac. Fisheries, Inc.)*, 16 F.3d 313, 315 n. 1 (9th Cir. 1994); 11 U.S.C. § 547(b).  A trustee bears the initial burden of proving each of these elements by a preponderance of the evidence.  *Arrow Elecs., Inc. v. Justus (In re Kaypro)*, 218 F.3d 1070, 1073 (9th

MEMORANDUM OF DECISION - 8

Cir. 2000); *Hopkins v. Merlins Insulation, LLC (In re Larsen)*, 06.3 I.B.C.R. 61, 61 (Bankr. D. Idaho 2006); 11 U.S.C. § 547(g).

Here, the parties have stipulated that four of the statutory preference elements are met.[8] However, they disagree as to when the transfer was made, and whether Brent was insolvent on that date. Because a trustee must prove that the debtor was insolvent on the date the transfer was made, the Court must first address the timing of the transfer.[9]

Section 547(e) of the Bankruptcy Code provides the framework for this analysis. It instructs, that for the purposes of § 547, the date a transfer is deemed to have been "made" is calculated by reference to when such

---

[8] The parties stipulated that (1) the transfer of the cabin was a transfer of an ownership interest of Brent in property; (2) Defendants were creditors of Brent; (3) the transfer was on account of an antecedent debt which Brent owed to Defendants before the transfer was made; and (4) the transfer enabled Defendants to receive more than they would have received in a chapter 7 liquidation had the transfer not been made. Docket No. 25.

[9] If the transfer occurred outside the § 547(b)(4)(B) one-year look back period, there is no need for the Court to address whether the Brent was insolvent on that date, because failure to prove any one of the statutory elements dooms the trustee's attempt to avoid the transfer. *In re Beck*, 24 B.R. 296, 305 (Bankr. D. Hawaii 1982).

MEMORANDUM OF DECISION - 9

transfer is perfected and enforceable as against third parties. *Swayne v. Strickland (In re Green)*, 98.1 I.B.C.R. 29, 30 (Bankr. D. Idaho 1998); 11 U.S.C. § 547(e)(2).[10]  In particular, § 547(e)(1)(A) provides that a transfer of real property is perfected:

> when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee.

11 U.S.C. § 547(e)(1)(A).  Thus, to implement this definition, the Court

---

[10] Section 547(e)(2) provides:

> For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made–
>   (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time, except as provided in subsection (c)(3)(B);
>   (B) at the time such transfer is perfected, if such transfer is perfected after such 30 days; or
>   (C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of--
>     (i) the commencement of the case; or
>     (ii) 30 days after such transfer takes effect between the transferor and the transferee.

MEMORANDUM OF DECISION - 10

must determine the moment in time when the transferee took the last step required by state law to perfect its interest in the transferred property. *Long v. Joe Romania Chevrolet, Inc. (In re Loken)*, 175 B.R. 56, 62 (9th Cir. BAP 1994).

Idaho has a race-notice recording statute.[11]  Under its terms, the last step a transferee must take to perfect its interest in real property against the claims of a hypothetical bona fide purchaser is the recording of the transfer instrument in the appropriate county real property records.

Plaintiff argues that Defendants did not perfect their ownership interest in the cabin until February, 2006, when Brent's former spouse, Connie, finally executed a quitclaim deed to Brent; when Brent subsequently executed a quitclaim deed to Defendants; and when those

---

[11] This statute, Idaho Code § 55-606, provides:

> Every grant or conveyance of an estate in real property is conclusive against the grantor, also against every one subsequently claiming under him, except a purchaser or encumbrancer, who in good faith, and for a valuable consideration, acquires a title or lien by an instrument or valid judgment lien that is first duly recorded.

MEMORANDUM OF DECISION - 11

deeds were recorded. Defendants disagree. Defendants contend that their interest in the cabin was perfected eighteen months earlier, on August 27, 2004, when they recorded the warranty deed conveying the cabin to them executed by Brent.

Plaintiff's argument is premised upon his contention that both the stipulated divorce decree and the August 2004 warranty deed were ineffective to transfer title to the cabin under Idaho law. Plaintiff contends that the stipulated divorce decree constitutes a "marriage settlement" under Idaho case law, and that in order to be valid and enforceable, it must be signed by the parties and acknowledged. *See Stevens v. Stevens*, 135 Idaho 224, 229 (Idaho 2000). Plaintiff therefore argues that the stipulation was ineffective to transfer ownership of the cabin from the community to Brent because it was signed only by the couple's divorce attorneys.

Building on this contention, Plaintiff next argues that, because the warranty deed which Brent executed in August 2004 was not signed by Connie, it too was void. *See* Idaho Code § 32-912 ("neither the husband

MEMORANDUM OF DECISION - 12

nor wife may sell, convey or encumber the community real estate unless the other joins in executing the sale agreement, deed or other instrument of conveyance by which the real estate is sold, conveyed or encumbered[.]").

Though having a certain logical appeal, Plaintiff's argument rests upon a faulty foundation and therefore fails. Contrary to Plaintiff's position, the state court's order approving and incorporating the stipulated decree of divorce terminated Brent's marriage to Connie, and as between the former spouses, effectively transferred the cabin to Brent free of any community interest of Connie. *State of Idaho, ex. rel. Moore v. Scroggie*, 704 P.2d 364, 369 (Ct. App. Idaho 1985) (holding that the divorce decree unequivocally awarded a parcel of community real property to the husband as his sole and separate property); *Jones v. State of Idaho*, 432 P.2d 420, 421 (Idaho 1967) (divorce decree operated to transfer husband's interest in real property to his former spouse in trust for their children). When Brent then executed and delivered the warranty deed to Defendants on August 20, 2004, he effectively divested himself of, and transferred to Defendants, any interest in the property. *Siegel Mobile Home Group, Inc. v.*

MEMORANDUM OF DECISION - 13

*Bowen*, 757 P.2d 1250, 1253 (Ct. App. Idaho 1988); Idaho Code § 55-606.

Connie was not required to sign the warranty deed because, by that time, she held no further interest in the cabin, and clearly was no longer Brent's spouse.

Defendants recorded the warranty deed on August 27, 2004, thereby perfecting their interest in the cabin as against any third party claims. As a result, August 27, 2004, is the "transfer date" for purposes of Plaintiff's § 547 avoidance action, and because that date was more than one year prior to the date of filing of Brent's bankruptcy petition, Plaintiff cannot avoid this transfer.

II.

A trustee may also avoid fraudulent transfers. Section 548(a)(1) provides, in part:

> The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
> (A) made such transfer or incurred such

MEMORANDUM OF DECISION - 14

>obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>    (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>        (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer . . . [.]

11 U.S.C. § 548(a)(1).

As with the preference analysis discussed *supra*, the timing of the target transfer presents a threshold question in this action. If the transfer occurred outside the two-year look back period, there is no need for the Court to examine Brent's intent, solvency, or the value received in exchange for that transfer. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535 (1994) (a trustee must prove all of the elements under § 548(a)).

The analysis under this section is similar to the preference analysis above, where the date of the transfer is determined by reference to the date

MEMORANDUM OF DECISION - 15

of perfection.[12]  The only significant difference to consider is that the look-back period for avoidable fraudulent transfers is two years, rather than the one-year period for avoidable insider preferences.

The Court has already determined that August 27, 2004 is the date the transfer of the cabin from Brent to Defendants was perfected as against a bona fide purchaser under Idaho law.  That date is more than two years prior to the filing of Brent's bankruptcy petition, therefore, Plaintiff cannot avoid this transfer as a fraudulent conveyance under § 548.

## Conclusion

Under the Bankruptcy Code and Idaho law, Brent transferred his interest in the cabin to Defendants more than two years prior to the filing of his bankruptcy petition.  As a result, Plaintiff cannot avoid that transfer

---

[12]  Section 548(d)(1) provides:

> For purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee[.]

MEMORANDUM OF DECISION - 16

under either §§ 547 or 548 of the Bankruptcy Code. A separate judgment in favor of Defendants dismissing this action with prejudice will be entered.

Dated: March 27, 2008

*[signature]*

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 17